CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 1 2 2012

JULIA C. DUDLEY, CLERK
BY:
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | |
|---|---|
| JEANNE HORNE, ) | Civil Action No. 1:11cv00048 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| CLINCH VALLEY MEDICAL ) | |
| CENTER, INC., ) | |
| ) | By: Samuel G. Wilson |
| Defendant. ) | United States District Judge |

This is an action pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), and the Americans with Disabilities Act, 42 U.S.C. 12101 *et seq.* ("ADA"), by plaintiff Jeanne Horne, a former nurse at Clinch Valley Medical Center ("Clinch Valley"), to redress her allegedly unlawful termination from Clinch Valley. Horne worked at Clinch Valley for more than twenty-five years before the hospital terminated her for violating its chain-of-command policy and "potentially slandering" an emergency-room doctor. Horne claims that those reasons are pretext for unlawful age and disability discrimination and that Clinch Valley actually terminated her because she is a nearly fifty-year-old, insulin-dependent diabetic. Clinch Valley has moved for summary judgment on both claims and argues that Horne cannot establish unlawful discrimination either by ordinary proof or by employing the burden-shifting proof scheme outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). The court agrees with Clinch Valley on Horne's ADEA allegations and will grant summary judgment on that claim. However, viewing Horne's ADA claim through a McDonnell Douglas lens, the court discerns triable issues of fact and will deny Clinch Valley's motion for summary judgment on that claim.

# I.

Horne was born in 1962 and has suffered from insulin-dependent diabetes since the age of five. In 1982, she started working as a registered nurse in Clinch Valley's emergency department. Twice a day, every day, Horne's diabetes required that she inject herself with insulin and take a few short snack breaks. Despite those requirements, Horne continued to work for Clinch Valley until the hospital terminated her in February of 2010. Clinch Valley's motivation for terminating Horne is the dispute underlying this lawsuit.

According to Clinch Valley, it was in February of 2010 that its Chief Nursing Officer, Timothy Harclerode, learned that Horne had spoken to its Chief of Surgery, Dr. Joseph Claustro, about a particular emergency-department doctor ("Dr. J"). Dr. Claustro had approached Horne to ask her about Dr. J's "patient care issues" during a recent shift. (Br. Supp. Mot. Summ. J. 4, E.C.F. No. 28; Resp. Mot. Summ. J. Ex. 10, 1, E.C.F. No. 31-10.) Though Horne had not worked on the day in question, she told Dr. Claustro what she had heard from other nurses. According to Harclerode, he decided "that [Horne's] discussions with Dr. Claustro violated the Hospital's chain of command policy," which requires that nursing staff seek to resolve patient-care issues with the attending physician before notifying her superiors. (Br. Supp. Mot. Summ. J. 4, E.C.F. No. 28; Resp. Mot. Summ. J. Ex. 11, 1–2, E.C.F. No. 31-11.) Harclerode also "believed that [Horne] potentially slandered Dr. J by gossiping to Dr. Claustro regarding purported patient care issues about which she had no first-hand knowledge." (Br. Supp. Mot. Summ. J. 4, E.C.F. No. 28.) Harclerode recorded his findings on a disciplinary form:

> On 2-4-10 Ms. Horne was asked by Dr. Claustro for her opinion of [Dr. J regarding a] chest tube pt. as well as any other issues. Ms. Horne had no 1st hand knowledge of this pt. but still shared [with] Dr. Claustro what she had "heard" from other staff. Ms. Horne failed to follow chain of command as it relates to physician issues identified by staff.
> . . .

[Horne made] potentially slanderous comments about an ER physician.

(Resp. Mot. Summ. J. Ex. 10, 1, ECF No. 31-10.) Harclerode terminated Horne based on his findings and, soon after, hired Elizabeth Harman, Horne's forty-six-year-old replacement.

Horne claims that her termination was set in motion in December of 2008, many months before her conversation with Dr. Claustro, when Clinch Valley held a managers' retreat in Glade Springs, West Virginia. At the retreat, Clinch Valley created a "Patient Satisfaction Committee." Soon after the retreat, the head of the Patient Satisfaction Committee asked the committee members to offer the names of employees believed to be "assets" and "non-assets." From those submissions, the committee-head created master "positive" and "negative" lists.[1] Horne claims that the negative, or "non-asset," list was actually a list of aged and unhealthy employees that Clinch Valley intended to purge from its payroll—and that Horne, who was insulin-dependent and forty seven when Clinch Valley terminated her, was one of the targets.

## II.

Clinch Valley contends that Horne has no proof, nor a prima facie case under McDonnell Douglas Corp. v. Green, of age discrimination. The court agrees and grants Clinch Valley's motion for summary judgment on Horne's age discrimination claim.[2]

The ADEA prohibits employers from "discharg[ing] any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). A plaintiff can avert summary judgment on an ADEA

---

[1] The non-asset list is attached as exhibit 4 to Clinch Valley's reply in support of its motion for summary judgment. The list includes Horne's name along with thirteen others.

[2] Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The party moving for summary judgment bears the burden of informing the court of the basis for its motion and identifying those parts of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In reviewing a summary judgment motion under Rule 56, the court "must draw all justifiable inferences in favor of the nonmoving party." United States v. Carolina Transformer Co., 978 F.2d 832, 835 (4th Cir. 1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

claim in one of two ways. First, a plaintiff may offer evidence of age discrimination under "ordinary principles of proof." Burns v. AAF-McQuay, Inc., 96 F.3d 728, 731 (4th Cir. 1996). To avoid summary judgment when proceeding under ordinary principles of proof, "the plaintiff must produce direct evidence of a stated purpose to discriminate and/or [indirect] evidence of sufficient probative force to reflect a genuine issue of material fact." Rhoads v. FDIC, 257 F.3d 373, 391 (4th Cir. 2001) (alteration in original) (quoting Brinkley v. Harbour Recreation Club, 180 F.3d 598, 607 (4th Cir. 1999)) (internal quotation marks omitted). "What is required is evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." Id. (quoting Brinkley, 180 F.3d at 607) (internal quotation marks omitted).

A plaintiff lacking such proof may proceed under the burden-shifting proof scheme explained in McDonnell Douglas Corp. v. Green.[3] See Moody v. Arc of Howard Cnty., Inc., No. 11-1720, 2012 WL 1184053, at *2 (4th Cir. April 10, 2012). Under this proof scheme, the plaintiff must first establish a prima facie case of discrimination by showing that she was (1) forty years of age or older when (2) her employer terminated her, that (3) she was performing her duties at a level that met her employer's legitimate expectations, and that (4) her former position remained open or was filled by a substantially younger person. Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004) (en banc); see also Dugan v. Albemarle Cnty. Sch. Bd., 293 F.3d 716, 721 (4th Cir. 2002) ("[T]he fourth element is satisfied with proof

---

[3] In Gross v. FBL Financial Services, 129 S. Ct. 2343 (2009), which held that the ADEA does not authorize mixed-motive discrimination claims and that plaintiffs must prove by a preponderance of the evidence that age was the "but for" cause of the challenged employer decision, Justice Thomas (the opinion's author) pointed out that the Supreme Court has not affirmatively decided whether the McDonnell Douglas framework applies to ADEA claims. Since Gross, however, courts outside this circuit have held that the McDonnell Douglas framework is still appropriate. See, e.g., Yeschick v. Mineta, 675 F.3d 622, 632 (6th Cir. 2012). The Fourth Circuit has not so held, but in fact routinely applied McDonnell Douglas to ADEA claims before Gross, see, e.g., Laber v. Harvey, 438 F.3d 404, 430 (4th Cir. 2006), and has since applied McDonnell Douglas to ADEA claims in unpublished decisions, see, e.g., Moody, 2012 WL 1184053, at *2.

4

of replacement by a substantially younger worker—not proof of replacement by someone entirely outside the ADEA's protected class."). If the plaintiff establishes a prima facie case of age discrimination, the burden (a burden of production) shifts to the employer to offer a nondiscriminatory reason for terminating the plaintiff. Hill, 354 F.3d at 285. And, if the employer meets its burden, a burden of proof returns to the plaintiff to prove that the employer's stated reasons were not its true reasons, but a pretext for age discrimination. Id.

Here, Horne asserts that she "can prevail in her claim of age discrimination under the AD[E]A under both methods." However, she makes no actual effort to argue her claim in terms of "ordinary principles of proof." See Fed. R. Civ. P. 56(c) (explaining the methods by which a party opposing summary judgment can create a genuine dispute of material fact); Ferdinand-Davenport v. Children's Guild, 742 F. Supp. 2d 772, 777 (D. Md. 2010) ("By her failure to respond to this argument, the plaintiff abandons any discriminatory discharge claim."). In fact, it requires a generous reading of Horne's summary-judgment response to glean a McDonnell Douglas argument for age discrimination. Regardless, Horne's claim fails under the fourth McDonnell Douglas prong because her replacement was only one year younger than Horne—not "substantially younger." See, e.g., Grosjean v. First Energy Corp., 349 F.3d 332, 340 (6th Cir. 2003) (holding that a replacement who was six years younger than the plaintiff was not "substantially younger").[4] Because there are no genuine issues of material fact on Horne's ADEA claim and Clinch Valley is entitled to judgment as a matter of law, the court will grant Clinch Valley's motion for summary judgment on this claim.

---

[4] Horne claims that her replacement was Faye Kennedy, who is "a few years younger than" Horne, and "over 40 years of age." (Resp. Mot. Summ. J. Ex. 6, 4, ECF No. 31-6.) Whether Horne's replacement was Elizabeth Harman, as Clinch Valley claims, or Faye Kennedy, as Horne claims, the outcome is the same.

## III.

Clinch Valley's arguments in favor of summary judgment on Horne's ADA claim largely mirror its arguments on Horne's ADEA claim. Clinch Valley contends that Horne has no ordinary proof of disability discrimination, no <u>McDonnell Douglas</u> prima facie case of disability discrimination, and no ability to demonstrate that Clinch Valley's nondiscriminatory reasons for terminating Horne were pretextual. Here again, Horne has neglected to argue in terms of ordinary proof and has therefore failed to establish a genuine issue of material fact by that method.[5] However, viewing this dispute through the <u>McDonnell Douglas</u> lens, the court finds that triable issues of fact preclude the court from resolving the controversy on summary judgment, and, accordingly, the court will deny Clinch Valley's motion on Horne's ADA claim.

Under the ADA, "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). As with age discrimination claims, courts evaluate ADA disability discrimination claims under the "ordinary principles of proof" and <u>McDonnell Douglas</u> proof schemes. <u>See</u> <u>Ennis v. Nat'l Ass'n of Bus. Educ. Radio, Inc.</u>, 53 F.3d 55, 57–59 (4th Cir. 1995). To establish a prima facie case of wrongful termination under the ADA, a plaintiff must show that (1) she was disabled; (2) she was discharged; (3) she was fulfilling her employer's legitimate expectations at the time of discharge; and (4) the

---

[5] The sum total of the evidence the court could consider "ordinary proof" of age or disability discrimination consists of this, which appears without elaboration in Horne's recitation of the facts:
>  Plaintiff testified that Knowles had told her on at least four occasions that she needed to quit and get on disability. . . .
>  In addition to plaintiff being listed on the "non-asset" list, which included the ages of all 14 individuals (78.6% of them over forty), Knowles stated that they "were getting older and [she] wasn't getting any younger."

(Resp. Mot. Summ. J. 5, ECF No. 31.) Horne, however, makes no effort whatsoever to incorporate these facts into her legal arguments for age and disability discrimination.

6

circumstances of her discharge raise a reasonable inference of unlawful discrimination. Id. at 58; see also Rohan v. Networks Presentations LLC, 375 F.3d 266, 272 n.9 (4th Cir. 2004) (citing Haulbrook v. Michelin N. Am., Inc., 252 F.3d 696, 702 (4th Cir. 2001)). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory explanation for its employment action. Ennis, 53 F.3d at 58. And, if the defendant meets its burden of production, the plaintiff must prove that the employer's proffered reason was actually a pretext for disability discrimination. See id. (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510 (1993). "At this point, 'a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.'" Heiko v. Colombo Sav. Bank, F.S.B., 434 F.3d 249, 258–59 (4th Cir. 2006) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000)).

There is no debate in this case as to the first three prongs of the McDonnell Douglas prima facie case: Horne has insulin-dependent diabetes, Clinch Valley terminated her, and she was meeting Clinch Valley's expectations. As to the fourth prong, Horne's argument features Clinch Valley's Patient Satisfaction Committee and the lists of "asset" and "non-asset" employees it created.[6] Horne contends that the "non-asset" list was in fact a list of aged and unhealthy employees whom Clinch Valley intended to terminate. She claims that she personally knew all fourteen people on the non-asset list, and that "all of them either had a medical condition or [a family member who did]." (Resp. Mot. Summ. J. Ex. 1, 23, ECF No. 31-1.) Horne's burden of establishing a prima facie case is "not onerous." Tex. Dep't of Comm. Affairs v. Burdine, 450 U.S. 248, 253 (1981); Ennis, 53 F.3d at 59. Under the circumstances, the

---

[6] Horne's other evidence on this point consists almost entirely of inadmissible hearsay.

court finds a reasonable inference of unlawful discrimination and will proceed to the question of pretext.

A plaintiff can show pretext by demonstrating that the defendant's explanation is "unworthy of credence" or by "offer[ing] other forms of circumstantial evidence sufficiently probative of intentional discrimination." Dugan v. Albemarle Cnty. Sch. Bd., 293 F.3d 716, 721 (4th Cir. 2002); Wright v. N.C. Dep't of Health & Human Servs., 405 F. Supp. 2d 631, 636 (E.D.N.C. 2005). Mere conjecture is insufficient to overcome a summary judgment motion, Anderson v. Coors Brewing Co., 181 F.3d 1171, 1179 (10th Cir. 1999), and the plaintiff must do more than present conclusory allegations of discrimination; "concrete particulars are required." Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985).

Here, Clinch Valley claims it terminated Horne because she violated the hospital's chain-of-command policy. In response, Horne refers the court to the policy itself, which states:

> If you evaluate the patient and feel the prescribed treatment regimen may adversely affect the patient, [or] does not comply with established policy and procedure you need to:
> - Contact the attending physician, or on-call physician, for clarification of the orders or prescribed treatment plan.
> - If, after discussing the issue with the attending physician, you still feel the order or treatment may adversely affect the patient, notify the charge nurse, your department manager or the house supervisor.
> - Continue to monitor and care for the patient[.]
> - Document the calls to the attending physician or on-call physician in the patient's medical record.

(Resp. Mot. Summ. J. Ex. 11, 1, ECF No. 31-11.) The policy further advises nursing staff to "always try to resolve the issue one on one with [the] attending physician prior to implementing the Chain of Command." (Resp. Mot. Summ. J. Ex. 11, 2, ECF No. 31-11.) Horne points out that she was not working with Dr. J on the day in question, so she had no opportunity to resort to the chain of command. Rather, Dr. Claustro approached Horne—several days after Dr. J's

patient-care issues—to seek Horne's professional opinions about Dr. J. At least on its face, the policy does not prohibit a nurse from answering the Chief of Surgery's questions when he poses them; it merely requires a nurse to follow a certain procedure when she is concerned about a doctor's prescribed treatment regimen. On that basis, a reasonable juror could conclude that Clinch Valley's "proffered explanation is unworthy of credence." Dugan, 293 F.3d at 721.

Clinch Valley's other proffered nondiscriminatory reason for terminating Horne is that she "potentially slandered" Dr. J while talking to Dr. Claustro. In response, Horne offers the deposition testimony of Clinch Valley's Leader of Human Resources, John Knowles, who stated that he could "not recall" an employee being terminated for "potentially" doing something during his thirty-three years as a human resources professional. (Resp. Mot. Summ. J. Ex. 3, 6, ECF No. 31-3.) And, Horne adds, her "potentially slander[ous]" statements were merely opinions that Dr. Claustro solicited. Again, a reasonable juror could conclude that Clinch Valley's "proffered explanation is unworthy of credence." Dugan, 293 F.3d at 721.

"At this point, [Horne's] 'prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.'" Heiko, 434 F.3d at 258–59 (quoting Reeves, 530 U.S. at 143). The court therefore leaves the question of disability discrimination to the jury and denies Clinch Valley's motion for summary judgment on Horne's ADA claim.[7]

---

[7] Clinch Valley cites Huppenbauer v. May Dept. Stores Co., 1996 WL 607087, at *7 (4th Cir. Oct. 23, 1996), a reasonable-accommodation case, for the proposition that "it is intuitively clear when viewing the ADA's language in a straightforward manner than an employer cannot fire an employee 'because of' a disability unless it knows of the disability." Clinch Valley's argues that "it is Plaintiff's burden to demonstrate that Mr. Harclerode knew she was disabled . . . when he made the decision to terminate her employment to establish a prima facie case of [disability discrimination]." (Mot. Summ. J. 8, ECF No. 28.) The cases employing this logic involve plaintiffs with inconspicuous disabilities (such as Hepatitis C or medically controlled psychological imbalances) who kept their conditions to themselves. Here, Horne's diabetes required two insulin injections during the work day, and she claims that everyone at work knew about her condition. Assuming (in the absence of precedent) that this burden exists under the McDonnell Douglas proof scheme, the court finds a question of fact regarding the decision-maker's knowledge of Horne's condition.

## IV.

For the reasons stated, the court finds no questions of material fact on Horne's age-discrimination claim, but finds a jury question on the issue of disability discrimination. Accordingly, the court grants Clinch Valley's motion for summary judgment on Horne's ADEA claim and denies Clinch Valley's motion on Horne's ADA claim.

**ENTER**: October 12, 2012.[8]

_____
UNITED STATES DISTRICT JUDGE

---

[8] Clinch Valley filed its motion for summary judgment on March 8, 2012. Upon reviewing Clinch Valley's motion, Horne's response, and the record, the court found two statements by the same witness that appeared diametrically opposed. The court ordered the witness deposed to resolve the conflict. Having reviewed the resulting deposition, the court is satisfied that the two statements are reconcilable.